## Bement, et al. v. Commonwealth.

(Decided November 28, 1916.)

Appeal from Leslie Circuit Court.

1.  Revenue and Taxation—Forfeiture of Land Under Section 4076b of the Kentucky Statutes for Failure to Pay Taxes—Sufficiency

of Petition.—In a suit to forfeit land under section 4076b of the Kentucky Statutes for failure to list it for taxation or pay the taxes thereon, there must be filed with the petition, as provided in the statute, a copy of the grant or instrument upon which the title or claim sought to be forfeited is based; otherwise a judgment by default will be void.

2. Revenue and Taxation—Forfeiture of Land Under Section 4076b of the Kentucky Statutes for Failure to Pay Taxes—Requisites of Petition.—A petition seeking to forfeit land under section 4076b of the Kentucky Statutes for failure to assess and pay the taxes thereon, in which the land sought to be forfeited is described only by the numbers of the patents, and when there is not filed with the petition the grant or instrument upon which the title or claim sought to be forfeited is based, is insufficient to support a judgment by default, and a judgment rendered on such a petition will be void.

3. Revenue and Taxation—Void Judgment Under Section 4076b of the Kentucky Statutes—Appeal From.—The provisions of section 4076b of the Statutes, regulating the time and manner in which appeals from judgments under the statute may be taken to this court, have no application to a case in which the judgment is void. They only regulate proceedings that are erroneous. But when a void judgment is entered under this statute, a motion should be made, in the court which entered the judgment, to set it aside, and if it fails to do this, an appeal may be prosecuted to this court.

4. Judgment—Void Judgment—Definition of.—A void judgment is no judgment. It has at no time or place any force or effect. It does not give the plaintiff anything or take from the defendant anything.

5. Judgment—Void Judgment—How Relief From May be Obtained.—A defendant who seeks relief from a void judgment should make a motion in the lower court to have it set aside, and upon the failure of the lower court to do this, prosecute an appeal to this court.

6. Judgment—Things Essential to Validity of.—It is just as indispensable to the validity of a judgment by default that the court should have jurisdiction of the subject-matter of the action as that it should have jurisdiction of the person of the defendant.

T. G. STUART, T. G. LEWIS, W. L. BROWN and HAZELRIGG & HAZELRIGG for appellants.

WILLIAM A. STANFILL, FAULKNER & FAULKNER, FAULKNER, STANFILL & FAULKNER and IRA FIELDS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On April 11, 1912, the Commonwealth brought this suit under section 4076b of the Kentucky Statutes to for-

feit the title to certain lands on account of the failure of the owners to assess or pay the taxes thereon. The petition, which was filed by Ira Fields, Commonwealth's Attorney, charged, in substance, that the Commonwealth had caused to be issued to A. F. Baum and William M. Smith patents numbered 46,687 to 46,690 inclusive; 46,697 to 46,699 inclusive; 46,781 to 46,794 inclusive; 46,799 to 46,801 inclusive, and 46,837 to 46,925 inclusive; and to William M. Smith, individually, patents numbered 48,809 to 48,836 inclusive, the land covered by these patents being located in Leslie county. It further charged that Baum and Smith were believed to be dead and it was unknown whether they died testate or intestate, and averred that the Commonwealth had no knowledge or information who owned the title to the land at the time the suit was brought, as the records of the Leslie county clerk's office did not show any transfers of the land covered by the patents by deed or will.

It was further averred that the devisees or heirs of the vendee or vendees of Baum and Smith, are "non-residents of the State of Kentucky, and, as plaintiff believes, are now absent therefrom, and that the plaintiff does not know the name of the place wherein a postoffice is kept nearest to the residence of any of them."

The petition further set out the names of some twenty different persons who were made defendants, and it was averred that these named defendants "are, as it believes and is advised and therefore avers, claiming title to and claiming to be the owner or owners of all or part of the land described in its petition and under the grants herein described; that they claim said tracts of land respectively, and title and ownership thereto, by deeds, devises, inheritance and transfers, through, by or under the said A. F. Baum and William M. Smith as vendors or devisors of said patents, but that neither of said defendants herein or any of their predecessors in title or vendors or vendees nor any of them, nor the original patentees aforesaid, nor any one claiming by, through or under them, or either of them, have at any time after the issuance of said patents respectively, and before the filing of this petition, ever caused the said lands or part thereof, or any interest therein to be listed for assessment or taxation for any purpose whatever in Leslie county or elsewhere in the State of Kentucky for either of the years as of September 1, 1906, September 1, 1907, September

1, 1908, September 1, 1909, September 1, 1910, and September 1, 1911, or paid any taxes whatever on same or any part thereof or interest therein for any of said years.''

It was also averred that ''by reason of the aforesaid failure of the owner or owners, claimant or claimants of the said tract or tracts of land, or of part thereof, or interest therein, under said patents, to pay the taxes which should have been assessed against him or them, or those under whom he or they claim, as the owner or claimant thereof, as of said dates, and the failure of the owner or owners, claimant or claimants of said tract or tracts of land, or part thereof, or interest therein, under said patents, to list such land, or part thereof, or interest therein, for assessment and taxation as of said dates, and the failure of said owner or owners, claimant or claimants, of said tract or tracts of land, or part thereof, or interest therein, under said patents, to pay the taxes which should have been charged against him or them, or those under whom he or they claim, as the owner or claimant thereof, as of the said dates, and for which the assessment in said act provided should have been made, said owner or owners, claimant or claimants, of said tract or tracts of land or part thereof, or interest therein, under said patents, and the said tract or tracts of land became and are delinquent, and that by reason of the aforesaid failure of the owner or owners, claimant or claimants of the said tract or tracts of land, or part thereof, or interest therein, under said patents, to pay the taxes which should have been assessed against him or them, or those under whom he or they claim, or to list same, has become and is subject to forfeiture and transfer to the plaintiff, the Commonwealth of Kentucky, of the claim and title of the owner or owners, claimant or claimants, under said patents, or any of them, of the said land hereinbefore described, and all and every part thereof, and all interest therein.''

The petition further set out that ''the plaintiff files, as part of this petition, duly certified copies of the aforesaid patents to said patentees upon which the title or claim of said land sought herein to be forfeited is based,'' but no patents appear with the petition or in the record although the entire record has been brought up. It was further averred ''that the Commonwealth's Attorney does not know the names or places of residence of the

heirs at law, devisees or grantees, or any of them, or of said patentees or grantees or any of them.''

On December 18, 1912, the clerk entered a warning order against the defendants, and on the same date certified that he had posted on the front door of the courthouse at Hyden, Kentucky, the county seat of Leslie county, a copy of the petition, together with the exhibits' referred to therein, although no exhibits appear in the record. He also certified that two warning orders were issued, one summons and one copy to Perry county and one summons and one copy to Letcher county.

It appears that on February 5, 1913, C. S. Cobb filed an answer reciting that he was defendant, although his name does not appear either in the caption or body of the petition as a defendant, and in this answer traversed the averments of the petition as to the assessment of the land and payment of taxes, and further averred that he was the owner of an undivided three-eighths in all of the tracts of land described in the petition, and averred that the three-eighths interest had been listed for assessment by him and his vendor, McNerney, for each of the years mentioned in the petition, and that all the tax due on said land had been paid.

The next order appears on February 7, 1913, when Begley filed his report as corresponding attorney, in which he said that ''he has used due diligence in trying to obtain the postoffice addresses of the following defendants, . . . , but has been unable to do so, and, therefore, could not notify the said defendants. He states that he has used due diligence in trying to obtain the names and postoffice addresses of the unknown defendants in order that he might correspond with them, but has been unable to do so, and, therefore, been unable to inform any of the defendants of the nature of the petition herein, and knows of no defense which they might desire made.''

On February 14, 1913, none of the defendants mentioned in the petition having appeared either by pleading or attorney, the case was called for trial and a jury impaneled, and the jury returned a verdict finding for the Commonwealth a forfeiture of all the land described in the petition except as to the interest owned by Cobb; and following this verdict there was a judgment forfeiting to the Commonwealth five-eighths of the land described. The judgment did not contain any description

whatever of the land, merely reciting that the land covered by the patents described by numbers only in the petition and in the judgment was forfeited. It was further ordered that the case should remain on the docket in order to give the defendants and those entitled to redeem the land an opportunity to do so under the statute.

On October 7, 1914, the defendants named in the petition, as well as some parties who are not named, but who claim to have an interest in the land, all of whom were non-residents of the State, came into court by attorney and moved the court to set aside the judgment of forfeiture rendered at the February term, 1913, and in this motion they set out that the land forfeited had been assessed each year from 1900 to 1913, inclusive, and that the taxes assessed had been paid for each of these years.

On October 14th the defendants named in the petition, as well as claimants not mentioned in the petition, tendered an answer in which it was averred that all of them were non-residents of the State and had never at any time resided in or been citizens of the State. They denied that the land had not been listed for each of the years, or any of the years mentioned in the petition, or that the taxes due had not been paid for each of said years. They further averred that an action had been brought by the Commonwealth in the Perry circuit court against the defendants mentioned in the petition herein to forfeit the title of patents numbered 46,410 to 46,430 inclusive; 46,442 to 46,446 inclusive; 46,462 to 46,661 inclusive; 46,681 to 46,699 inclusive; 46,771 to 46,986 inclusive, and 48,709 to 48,836 inclusive, and upon a trial of said suit in the Perry circuit court it was adjudged that the title to the land should not be forfeited, as the land has been assessed and the taxes paid thereon for each year from 1901 to 1913, inclusive.

The answer also recited a good many other matters that we do not think necessary to extend this opinion in setting out. But the court overruled the motion to set aside the forfeiture and refused to permit the tendered answer to be filed, and the case has been brought here.

It is provided in section 4076d of the Kentucky Statutes that the petition by the Commonwealth seeking a forfeiture "shall allege the facts constituting the cause of forfeiture under the provisions of this article, and there shall be filed with it a copy of the grant or instrument upon which the title or claim sought to be forfeited"

is based; and no other title, claim or possession, or continuity thereof, whether owned or claimed by the defendant or by others, shall be forfeited or in any manner affected by said proceeding. The prayer shall be for a judgment of forfeiture and sale of the title or claim in the petition described.''

It will be observed that under this statute it is provided that the Commonwealth shall file with the petition ''a copy of the grant or instrument upon which the title or claim sought to be forfeited is based; and no other .title, claim or possession, or continuity thereof, whether owned or claimed by the defendant or by others, shall be forfeited or in any manner affected by said proceedings.'' But the record shows that there was not filed with the petition or made a part of the record any of the patents sought to be forfeited nor does the petition contain any description whatever of the land. It merely recites the numbers of the patents, coupled with the averment that patents for these numbers had been issued to Baum and Smith.

This is a very rigorous statute and before land can be forfeited under it every requirement of the statute must be observed.

The extraordinary nature of this statute and the great injustice that might be perpetrated in the name of the Commonwealth under it, is well illustrated in the case we have. Here it appears from the undisputed record that land owned by non-resident defendants, probably many thousands of acres, worth many thousands of dollars, has been taken from them by a default judgment and forfeited to the Commonwealth under the pretense that the owners had not assessed the land or paid the taxes thereon for certain years, although, in truth and in fact, as appears from the record, the land had been assessed for each of the years and the taxes paid for each of the years.

This condition was allowed to come about in this way. The non-resident owners did not make any defense to the action forfeiting their land before the judgment or after the judgment within the time allowed by the statute for the very good reason that they did not know of the forfeiture proceedings, although they were warned to appear in the action and given constructive notice in the manner provided in the statute. But this constructive notice, although sufficient under the statute to bring

these non-resident defendants before the court, did not, as appears from the record, bring home to them, or any of them, any notice of the proceedings, because the post-office address of none of the defendants was given, and the warning order attorney whose duty it was to notify them of the pendency of the action filed his report saying that he could not give them any notice because he did not know and could not obtain their postoffice addresses or places of residence. So that the owners of the land did not know until some time after the judgment what had been done.

Fortunately, however, for the course of justice, the record itself upon which the forfeiture judgment was declared, furnishes a remedy by which the great wrong attempted to be perpetrated in this case may be corrected. The ground on which the relief to which the land owners are entitled may be rested is that the petition is so fatally defective as to be insufficient to uphold the judgment by default.

When it is sought to forfeit land under this drastic statute, the title papers describing the land must be filed with the petition, as directed in the statute, and this record furnishes a good example of the necessity for requiring that the title papers be filed with the petition before a judgment by default can be taken. There is no description whatever in the body of the petition of the land sought to be forfeited, or in any exhibit filed with it or in the record. The land in the petition, as well as in the judgment, is merely described by what is alleged to be the numbers of the patents. It is, therefore, plain that no person could by an examination of the petition or the judgment or, indeed, the entire record, have the remotest idea where the land was located, its boundary, or how many acres it contained. This information could only be obtained, if at all, by securing from the registration office at Frankfort the patents on which the titles of the forfeited land depended.

We are, therefore, of the opinion that the filing of the grant or patent is a jurisdictional requirement without which the court has no power to render a judgment by default, and so the judgment of forfeiture was absolutely void. It is just as indispensable to the validity of a judgment by default that the court should have jurisdiction of the subject matter of the action as that it should have jurisdiction of the person of the defendant.

In this case the court did, as appears from the record, have jurisdiction of the persons of the defendants, but it did not have jurisdiction of the subject matter of the action, as this jurisdiction could not be acquired until and unless the statutory requirement as to the filing of title papers was complied with. Actions under this statute are strictly proceedings *in rem* and in such cases the thing sought to be affected must be described so that it may be identified by the record.

As the judgment was void, the court should have set it aside on the motion made for that purpose, and when the court failed to do this, the defendants had the right to prosecute an appeal to this court. The provisions of the statute regulating the time and manner in which appeals from judgments under this statute may be taken to this court have no application to this case. They only regulate proceedings concerning judgments that are erroneous and not void. A void judgment is no judgment. It has at no time or place any force or effect. It does not give the plaintiff anything or take from the defendant anything.

One remedy of which the defendant may avail himself to relieve his property of the cloud that even a void judgment may put on it is to make a motion in the lower court to have the void judgment set aside, which was done in this case, and upon the failure of the lower court to do this, prosecute an appeal to this court.

Wherefore, the judgment is reversed, with directions to set aside the judgment of forfeiture and permit the owners of the land forfeited and the parties in interest to make defense to the forfeiture action.